556 So.2d 629 (1990)
Patricia and Boyd LLOYD, Appellants,
v.
TG & Y STORES COMPANY, Dollar T Store; Household Merchandising, Inc., d/b/a TG & Y Stores Company; McCrorys, Appellees.
No. 21075-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Rehearing Denied February 22, 1990.
*631 Gordon & Bailey by Richard S. Feinberg, Shreveport, for appellants.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for appellees.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Plaintiffs, Patricia and Boyd Lloyd, appealed the judgment awarding Patricia Lloyd general damages of $12,500 and awarding Boyd Lloyd damages of $5000 for loss of consortium and reducing those damage awards based upon the assessment of Patricia Lloyd with 50% fault in plaintiffs' action for personal injury damages as the result of a "slip and fall" accident. On appeal, plaintiffs seek an increase in damages.
Issues Presented
Plaintiffs assert the following assignments of error:
1) The trial court erred in determining that plaintiff was contributorily negligent;
2) The trial court erred in awarding only $12,500 in general damages;
3) The trial court erred in not considering Dr. Burda as plaintiff's primary treating physician; and,
4) The trial court erred in not making an award for future medical expenses.
Factual Context
On November 13, 1985, Patricia Lloyd, a thirty year-old housewife, accompanied by her friend, Cathy Jones, was shopping at the Dollar T Store located at Kings Highway and Mansfield Road in Shreveport. Plaintiff and Jones were sharing a buggy, which was full of items. Plaintiff was at the check-out counter ready to make her purchases when a "blue light" special on *632 calculators was announced over the intercom. She observed the stand with the flashing blue light and began to proceed in the direction of the special with her buggy in front of her. When plaintiff turned to go toward the special, her right foot slipped from underneath her and she grabbed the buggy to keep from falling. She did not fall to the ground but held onto the buggy, twisting and injuring her lower back. Following her fall, plaintiff proceeded to the "blue light" special, purchased a calculator and then reported the accident to the store manager. She went to the hospital later that afternoon for medical treatment.
On November 12, 1986, plaintiff and her husband, Boyd Lloyd, instituted this action for personal injury damages naming as defendants, TG & Y Stores Company, Dollar T Store, Household Merchandising, Inc., d/b/a TG & Y Stores Company and McCrorys Stores. In their petition, plaintiffs alleged that while shopping at the store, Patricia Lloyd slipped on a substance on the floor, which was later identified as Spic and Span, causing severe injuries. Plaintiffs generally alleged that defendants were strictly liable for all damages incurred by them and in the alternative, defendants were liable because of their negligence.
In their answer, defendants alleged that an unknown customer had caused a spill on the store floor and defendants' employees had placed buggies around the spill to prevent accidents. Defendants asserted that the sole and proximate cause of the accident was the fault of plaintiff in failing to see a foreign substance on the floor and in failing to take proper precautions for her own safety. In the event the court found plaintiffs were entitled to any judgment, defendants contended that the amount of such awards should be reduced in proportion to the percentage of negligence attributable to plaintiff.
At the trial, plaintiff testified she was ready to make her purchases when the "blue light" special caught her attention. As she was proceeding to the special, plaintiff slipped on a large pizza size puddle of Spic and Span which had a yellowish color. The floor of the store was a whitish, speckled tile. Plaintiff said she could not see through her buggy and her attention at the time of the fall was diverted to the special. Plaintiff stated she did not see the puddle before she slipped and there were no warning signs or any buggies placed around the spill. Plaintiff went to the hospital after she arrived home as her lower back was hurting with a dull aching pain. She was seen by Dr. Harold R. Bicknell, an orthopedic surgeon, on November 19, 1985, for lower back problems and swelling in her legs. She was also treated by Dr. Christopher Burda, a rheumatologist, for over a year and a half. Plaintiff stated that her main problem following the accident was a dull pain in her lower back but she also experienced difficulties with swelling in her leg, hand, shoulders and knee.
Plaintiff said that at the date of trial she continued to have problems with her back and shoulder, primarily a dull aching pain. Plaintiff has three children and testified she experienced difficulty in performing her household duties and with physical activities such as playing basketball with her children. She was also unable to sleep restfully, was upset easily and easily fatigued. The evidence established plaintiff had three back surgeries for a congenital defect when she was three years old, foot surgery in 1983 and a hysterectomy in 1984, but plaintiff asserted she had experienced no complications from these surgeries and had no lower back pain until her accident.
Dr. Christopher D. Burda, a rheumatologist, testified he first saw plaintiff on May 21, 1986. Plaintiff complained of pain between her shoulder blades and in the low back area. The physical examination was normal aside from the finding of tender points, which are anatomical spots on the body that elicit a "jump" sign when palpated or punched, in the shoulder areas, the low back area and both lower extremities. Dr. Burda's diagnosis was chronic traumatic myoligamentous strain or fibrositis secondary to the injury sustained when plaintiff fell. Dr. Burda considered the "jump" signs elicited at the tender points to be objective symptoms.
*633 During the course of Dr. Burda's treatment, he prescribed medication, administered electrical stimulation and plaintiff was given a "TENS" unit. Dr. Burda testified that the fibrositis syndrome is a common musculoskeletal condition in which there is aching and pain all over the body or in localized regions. The patients usually have tender points and other associated problems which include disturbed sleep, irritable bowel syndrome, numbness and tingling. Dr. Burda testified plaintiff fit the pattern of the usual fibrositis patient. He stated that fibrositis is permanent and there is constant pain associated with it.
Dr. Burda followed plaintiff's condition with monthly visits until November 19, 1987. Plaintiff's complaints were primarily of pain and stiffness in her lower back. The last time Dr. Burda examined plaintiff was on January 14, 1988. Plaintiff still had tender points and complained of pain. Dr. Burda stated he was of the opinion that plaintiff's pain would be permanent and he assigned a 10% permanent partial disability. Plaintiff would have future medical expenses and the doctor planned to see her every three to four months for an indefinite period. Dr. Burda testified plaintiff may also occasionally need physical therapy and medication. Dr. Burda stated he continued to treat plaintiff after he ascertained she had fibrositis to make certain she would not develop any other rheumatic disease or lumbar disc problems. Dr. Burda testified he had seen an improvement in plaintiff during his period of treatment and a decrease in her pain symptoms. His prognosis for plaintiff was good.
Dr. Harold R. Bicknell, an orthopedic surgeon, testified he first saw plaintiff on November 19, 1985. Plaintiff was complaining of low back pain following the accident. Dr. Bicknell's diagnosis was a musculoligamentous strain to the lumbosacral spine with no evidence of a herniated disc. He stated the injury was a soft tissue injury and his findings were subjective in nature. Dr. Bicknell followed plaintiff's condition through ten periodic office visits from December 4, 1985 through March 9, 1988. Plaintiff continued to complain primarily of lower back pain and on occasion pain radiating in her right leg, which was not unusual with individuals who have low back pain. Dr. Bicknell treated plaintiff conservatively with medication and also referred her to physical therapy. Dr. Bicknell never observed any muscle spasms or objective signs of injury and expected plaintiff to improve with continued conservative treatment and medication. Dr. Bicknell testified that plaintiff's complaints essentially stayed the same from the date of the accident and that there was no real change in her condition. Although Dr. Bicknell believed plaintiff had improved somewhat since the accident, he testified that plaintiff may have some chronic lumbosacral strain with a 3 to 5% disability. Dr. Bicknell stated plaintiff's problem in her back was primarily muscular in origin and he did not believe there was any other limitation of motion or other disability.
Dr. Bicknell testified that plaintiff would improve with continued conservative management. He stated that these types of injuries resolve themselves within three months and he expected plaintiff's injury to resolve itself within a matter of weeks. He did not anticipate the need for any future physical therapy or medication based upon his observations during the course of plaintiff's treatment. He thought plaintiff was able to proceed with her normal activities and, other than some periodic back pain and discomfort, she would be able to carry out her usual daily activities. He did not expect plaintiff's injury to have any impact on her enjoyment of leisure time, future employability, day-to-day life or sleeping habits.
Dr. Carl Goodman, an orthopedic surgeon, testified that he examined plaintiff on June 22, 1987. Dr. Goodman's diagnosis of her condition was lumbar strain and sprain and he found no objective signs of injury. He could not explain plaintiff's prolonged problems on the basis of objective physical findings but related some of her difficulties to the underlying developmental abnormality in her lower back. He expected plaintiff to recover to her pre-injury status at some time in the future but could *634 not give a specific treatment to hasten her recovery.
Larry N. Larson, a licensed physical therapist, testified plaintiff was treated by Larson Physical Therapy between January 6, 1986 and February 7, 1986 and then again on March 17, 1988 through March 22, 1988. Larson found objective signs of injury as plaintiff demonstrated increased muscle tone of the lumbar spine, muscle spasms on the right side of the lumbar spine, pain radiating from the low back into the buttocks and right leg and pain with motion. Plaintiff generally complained of pain in her lower back since the accident. Larson stated he would see plaintiff in the future if it was ordered by her physician and that plaintiff would need to be seen for approximately six weeks.
After the trial on the merits, the trial court concluded that plaintiffs had adequately proven the liability of defendants. However, the court found the question of quantum was somewhat troublesome as plaintiffs presented two extremely weak witnesses, Patricia Lloyd and Dr. Burda. The court noted that plaintiff testified evasively and that a comparison of her testimony at trial and at deposition revealed many discrepancies. The court further noted there were some discrepancies in Dr. Burda's testimony and there was an "air" or "feeling" surrounding Dr. Burda's testimony that weakened his credibility. The court noted that Dr. Burda continued to treat the patient with 21 office visits and 40 visits for electrical muscle stimulation even though on the second visit his reports indicated plaintiff was getting better and by the fifth visit Dr. Burda stated plaintiff was in stable condition. Dr. Burda's reason for continuing to treat plaintiff was to make certain there was no disc problem or rheumatology disease. However, the court found the evidence showed no justification for Dr. Burda's continued treatment. For those reasons, the court gave greater weight to the testimony of the initial treating physician, Dr. Bicknell, and considered him to be the primary treating physician.
In examining Dr. Bicknell's testimony, the court observed that Dr. Bicknell believed the injury would have resolved itself within three to four weeks. The court noted that Dr. Bicknell concluded plaintiff could perform her normal activities with no limitation and that the injury would have no effect upon her daily activities.
Finding that plaintiff had suffered a soft tissue injury that persisted for a number of months, the court awarded $12,500 in general damages together with special damages, except those related to plaintiff's knee. In determining whether plaintiff was contributorily negligent, the court found plaintiff was required to maintain a proper lookout and to observe what a reasonable person should have seen under the circumstances. The court found that a spill of this size and color should have been seen by a reasonable person maintaining a proper lookout. Therefore, it assessed plaintiff with 50% of the fault in the accident. The court awarded plaintiff's husband $5000 for his consortium claim subject to the 50% reduction.
Contributory Negligence
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own safety and protection, that standard being that of a reasonable man under like circumstances. Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir. 1986), writ denied, 502 So.2d 114 (La. 1987) and 502 So.2d 117 (La.1987).
La.C.C. Art. 2323 provides that a plaintiff whose negligence contributes to his own injuries for which he seeks damages shall have his claim reduced in proportion to his degree of fault.
In the typical store "slip and fall" case, plaintiff does not have a duty to maintain a constant observation of the floor on which he is walking, while the owners of the premises have a high duty of care in keeping the aisles of their establishment clean. As noted in the jurisprudence, self-service stores require customers to look for and to find the objects which they wish to purchase. These objects are placed upon shelves of various sizes and heights. Discernment of a particular object for purchase requires fairly strict surveillance of *635 the shelving in order to discover the item desired. Thus, numerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk. Further, the self-service system increases the risk of harm from objects dropped on the floor by customers and correspondingly, the duty to minimize the risk by frequent inspections and cleanups. A customer has the duty to see and avoid obvious hazards. However, in examining the evidence in these types of cases, the court will take cognizance of the natural tendency of the shopper to focus on the displayed merchandise rather than down at the floor in front of him. Meshell v. Shamsie, 528 So.2d 1023 (La.App. 3d Cir.1988); Raymond v. Safeway Stores, Inc., 522 So.2d 1350 (La.App. 2d Cir.1988); Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988); Brown v. Great Atlantic & Pacific Tea Company, Inc., 509 So.2d 557 (La.App. 3d Cir.1987), and Bonnette v. K-Mart, Inc., 502 So.2d 202 (La.App. 3d Cir.1987).
On appeal, plaintiffs argue that the court erred in finding plaintiff was contributorily negligent since her attention was not on the floor but rather on the flashing blue light elevated above floor level, specifically designed by the store to distract the shoppers' attention to the special. Plaintiffs contend that the spill was not obvious and plaintiff could not see the spill due to her full buggy and the lack of no warning signs. Therefore, considering these factors, it was impossible to expect plaintiff to closely observe the floor when proceeding to the "blue light" special.
Based upon our review of the record, we find that the trial court was correct in assessing some measure of comparative fault to plaintiff. Although defendants' actions in diverting the shoppers' attention by means of the flashing elevated blue light certainly created a higher standard of care for the store to maintain and regularly inspect the floor to keep it free from unreasonably dangerous conditions, plaintiff should have also maintained an appropriate degree of attentiveness for her own protection. The evidence demonstrated that the spill was located near the front of the store, was the size of a large pizza, and yellowish in color on a white floor. It appears that a spill of this size and color should have been observable when plaintiff turned to go to the special. Plaintiff should have exercised appropriate care for her own protection and could not be oblivious to hazards which would be observable with the exercise of reasonable care. Accordingly, we find no error in the trial court's assessment of plaintiff with some measure of fault.
While we agree with the assignment of comparative fault to plaintiff, we conclude that the trial court erred in assessing that fault at 50%. In "slip and fall" cases, the duty of the plaintiff must be measured against the atmosphere created by the defendants. In this case, defendants' conduct in employing an elevated flashing blue light as a marketing technique not only diverted plaintiff's attention from her path but also encouraged her to move at a faster than normal pace to "beat the clock" and get the merchandise during the special sale. Considering the distraction and the sense of urgency created by the flashing blue light, we find that the degree of fault attributable to plaintiff should be fixed at 25%.
General Damages
The assessment of monetary damages is discretionary with the trial court and a judgment cannot be disturbed by a reviewing court absent a clear showing of abuse of discretion. The determination of whether the trial court abused its discretion in assessing damages must be based upon the peculiar facts of each case and with due regard for the fact that the trial court is in the best position to evaluate the credibility of the witnesses, including their testimony about the nature and extent of their injuries. It is only after an articulated analysis of the facts and circumstances peculiar to the case and the individual that a reviewing court may determine that an award is inadequate or excessive. *636 Hunt v. Board of Supervisors of Louisiana State University, 522 So.2d 1144 (La. App. 2d Cir. 1988); Partner v. Anderson, 513 So.2d 471 (La.App. 2d Cir.1987) and Tyler v. Richardson, 476 So.2d 899 (La. App. 2d Cir. 1985), writ denied, 478 So.2d 907 (La. 1985).
The question for the appellate court is not whether a different award may have been more appropriate but rather whether the trial court's award can be reasonably supported by the record. In testing whether the trial court abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. The appellate court must first reach a determination that the trial court abused its discretion before a resort to prior awards is appropriate for purposes of determining what would then be an appropriate award. Red v. Taravella, 530 So.2d 1186 (La.App. 2d Cir.1988); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987), and Cutchall v. Great American Pump Company, 460 So.2d 1106 (La. App. 2d Cir. 1984).
Plaintiffs argue the trial court erred in awarding only $12,500 in general damages considering the severity of plaintiff's damages, the medical evidence concerning the disability incurred by plaintiff and the severe curtailment of plaintiff's normal activities.
In applying the standard of review noted above, and having considered the particular facts and circumstances and individual in this case, we find the trial court did not abuse its discretion in making this award. It found plaintiff and Dr. Burda to be extremely weak witnesses. Although Dr. Burda and Dr. Bicknell were both treating physicians, the trial court chose to give greater weight to the testimony of the initial treating physician, Dr. Bicknell. Dr. Bicknell's testimony established plaintiff had a chronic lumbosacral strain and would possibly experience intermittent pain until the condition was resolved but he did not expect any future medical problems. Plaintiff had no objective signs of injury. Dr. Bicknell released her because he thought her condition would improve with conservative management. His diagnosis was supported by the testimony of Dr. Goodman.
Considering all the factors in this case, we find that the trial court did not abuse its discretion in awarding plaintiff $12,500 in general damages. The award is supported by the record, particularly the testimony of Dr. Bicknell.
Medical Expert Testimony
After weighing and evaluating the medical and lay testimony, the trial court may accept or reject the opinion expressed by any medical expert. The trial judge should evaluate the expert testimony according to the same rules which are applicable to other witnesses. The trial court is not bound by expert testimony. It may substitute its own common sense and judgment for that of an expert witness where, in the opinion of the trier-of-fact, such substitution appears to be warranted by the evidence as a whole. The weight which is to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. The trial court's evaluation of expert and lay testimony will not be disturbed unless found to be clearly wrong. Bonnette v. K-Mart, Inc., supra; Myers v. Ford Motor Company, 486 So.2d 1030 (La.App. 2d Cir. 1986), and Tyler v. Richardson, supra.
Plaintiffs argue that the trial court erred in not considering Dr. Burda as the primary treating physician because Dr. Burda saw plaintiff on 21 occasions as opposed to only 11 visits to Dr. Bicknell. Based upon the number of treatments, familiarity with plaintiff and consistency of treatment, plaintiffs contend that Dr. Burda, rather than Dr. Bicknell, should have been considered as plaintiff's primary physician.
After hearing the testimony of Dr. Burda and Dr. Bicknell, the trial court apparently chose to reject Dr. Burda's diagnosis of fibrositis based in part on its finding that Dr. Bicknell should be considered as the primary treating physician.
Although the trial court referred to Dr. Bicknell as the primary treating physician, *637 it does not seem that this designation was a decisive factor in the decision to reject Dr. Burda's diagnosis and recommendations for future treatment. It appears both Dr. Burda and Dr. Bicknell were treating physicians and each had ample opportunity to observe, examine and treat plaintiff. Thus, the characterization of one physician as "primary" is of little significance. In its opinion, the trial court simply found Dr. Burda's testimony to be less credible based upon its evaluations of credibility and elected to select Dr. Bicknell's testimony, finding it to be more persuasive. Based upon our review of the record, we find no abuse of discretion in the trial court's rejection of Dr. Burda's testimony and, accordingly, this assignment of error is without merit.
Future Medical Expenses
An award for future medical expenses is in great measure highly speculative and not susceptible of calculation with mathematical certainty. However, like any other element of damages, future medical expenses must be established with some degree of certainty. Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable costs. Hunt v. Board of Supervisors of Louisiana State University, supra.
Plaintiffs argue that the trial court erred in not awarding future medical costs to plaintiff contrary to the medical evidence, particularly the testimony of Dr. Burda and Larry Larson.
As noted above, the trial court found Dr. Burda's testimony as to fibrositis and the need for future medical care was not credible. The trial court chose to rely instead on the testimony of Dr. Bicknell which indicated that future medical treatment and medication was unnecessary. Since the trial court chose to reject Dr. Burda's testimony, we find plaintiff did not meet her burden of proof as to the need for future medical treatment. Thus, the trial court did not err in refusing to award these alleged future expenses.
Conclusion
For these reasons, the judgment of the district court is AMENDED to increase the general damage award in favor of Patricia Lloyd to $9375 and the award in favor of Boyd Lloyd to $3750 and, as amended, the judgment is AFFIRMED. Costs of appeal are assessed to defendant.
SEXTON, J., concurs and assigns written reasons.
SEXTON, Judge, concurring.
I file this concurrence to emphasize the distinction between the instant case and Ritchie v. S.S. Kresge Company, Inc., 505 So.2d 831 (La.App. 2d Cir.1987), writ denied, 507 So.2d 227 (La.1987), upon which the trial judge relied to assess 50 percent of the fault to the instant plaintiff. In Ritchie, we affirmed a jury's 50 percent assessment of fault to a plaintiff who had slipped on a cellophane bag described as being similar to a package for socks. When that plaintiff fell, she could be characterized as an ordinary shopper who was merely seeking to locate the correct department in a large store. That plaintiff conceded that the item on the floor was easy to see "after I looked down at the floor." We thus concluded that the fact finder was not clearly wrong in assessing plaintiff with one-half of the fault for failure to keep a proper lookout.
In contrast, in the instant case in which we reduce the trial judge's assessment of 50 percent of fault to the plaintiff to 25 percent, the liquid spilled on the floor seems more obscure than the cellophane. More importantly, the instant plaintiff's attention was diverted by the defendant's marketing scheme (an elevated flashing light) which by its nature would divert a shopper's attention from the floor. Further, the plaintiff was required to exercise some haste in order to take advantage of the special offer.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., SEXTON, NORRIS, MARVIN and LINDSAY, JJ.
Rehearing denied.