**ST. MARY'S MEDICAL CENTER OF EVANSVILLE, INC., Appellant–Defendant,**

v.

**Gregory J. LOOMIS, M.D., Appellee–Plaintiff.**

No. 82A01–0112–CV–488.

Court of Appeals of Indiana.

Dec. 17, 2002.

Publication Ordered Feb. 3, 2003.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale, Indianapolis, D. Timothy Born, Terrell, Baugh, Salmon & Born, Evansville, James W. Riley, Jr., Riley Bennett & Egloff, Indianapolis, Attorneys for Appellant.

David M. Mattingly, Fred R. Biesecker, Brian J. Paul, Indianapolis, Gregory G. Meyer, Evansville, Gregory J. Bubalo, Becker Law Office, Louisville, KY, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant St. Mary's Medical Center of Evansville, Inc. (the Hospital) appeals the jury verdict granted to appellee-plaintiff Gregory J. Loomis, M.D. Specifically, the Hospital argues that the trial court abused its discretion in denying the Hospital's motion for judgment on the evidence and in refusing to give an instruction stating that Dr. Loomis was a licensee on the Hospital's premises instead of an invitee at the time of the accident. The Hospital also contends that the $16,950,000 damage award is excessive. Concluding that the trial court did not abuse its discretion and that the damage award is not excessive, we affirm.[1]

## FACTS

The facts most favorable to the verdict reveal that Dr. Loomis, a neurosurgeon in private practice in Evansville, had surgery privileges at the Hospital. On November 19, 1998, Dr. Loomis was visiting his patients in the east wing of the Hospital's fourth floor (4–East). Dr. Loomis stopped at the 4–East pantry to pour himself a cup of coffee. Dr. Loomis, other physicians, and the Hospital's employees regularly used the pantry for coffee breaks. As he entered the pantry, he noticed that the pot was not near the coffee maker. He saw the pot, full of water, sitting near the sink at the opposite end of the room. He walked to the sink, picked up the pot with his left hand, turned toward the coffee maker, took a step, and slipped. Dr. Loomis fell backwards onto his left side. He landed on the region of his left kidney. His outstretched left arm hit the floor as well, the water in the pot sloshing out to Dr. Loomis's left. When he sat up, water was on the back of his scrubs in the area where he had landed. A nurse's assistant

---

1. We suspended consideration of this appeal until December 1, 2002. Although the parties have been in mediation, they were unable to reach an agreement. Therefore, we proceed to decide this case on the merits based upon the briefs that have been submitted by the parties.

and secretary entered the pantry after hearing Dr. Loomis fall. Upon arrival, they saw Dr. Loomis sitting up, holding his left arm.

Lisa Bihm, the assistant nurse manager for 4–East prepared an incident report, noting that there had been water on the floor of the pantry. Bihm escorted Dr. Loomis to Employee Health Services. When Dr. Loomis expressed embarrassment about his fall, Bihm responded, "There's always water on the floor." Appellee's App. p. 27. Patricia Borst, a nurse practitioner with Employee Health Services, noted that Dr. Loomis complained of pain in his left flank and left elbow, along with the fact that Dr. Loomis's back was wet.

After the accident, Dr. Loomis developed severe pain in his left elbow. While Dr. Loomis had had surgery on his elbow in September 1998 for "tennis elbow," the pain after the slip was "the worst pain [he had] ever had in [his] life." Appellant's App. p. 32. The pain kept him from sleeping at night. While Dr. Loomis usually performed about 250 surgeries per year, after his fall he could perform only three, and those with great difficulty.

Dr. Loomis's condition worsened. He developed an arm tremor. The hair on his arm fell out and the skin underneath became shiny. His arm would occasionally turn purple, and his arm muscles atrophied. He began to compensate by using his right arm, but the overuse he placed on the right arm produced carpal tunnel syndrome and arthritis in that arm.

By December 1998, Dr. Paul Perry, Dr. Loomis's physician, diagnosed reflex sympathetic dystrophy (RSD), a syndrome where the body's repair mechanisms are activated in response to a normal injury "but never get turned off." Appellee's App. p. 228–29. Dr. Perry testified that the symptoms Dr. Loomis was experiencing were unlike those associated with tennis elbow. In April 1999, Dr. Loomis stopped seeing patients on account of the pain in his arm and sold his practice. Shortly thereafter, Dr. Perry told Dr. Loomis that it was unlikely he would ever be able to practice neurosurgery again.

On December 15, 1999, Dr. Loomis filed a complaint against the Hospital, alleging that the Hospital negligently failed to maintain its floor in a reasonably safe condition. After motions for partial summary judgment filed by both parties were denied, a jury trial began on July 24, 2001. After Dr. Loomis rested his case, the Hospital moved for judgment on the evidence, alleging that no evidence existed to show that the 4–East pantry was in a dangerous condition and that it owed Dr. Loomis no duty. The trial court denied the Hospital's motion.

Both parties submitted final jury instructions. One of the Hospital's tendered instructions defined the term "licensee" and outlined the duty owed to a licensee by an occupier of land.[2] The trial court refused the Hospital's instructions and instead instructed the jury that Dr. Loomis was an invitee to whom the Hospital owed a duty of reasonable care.

On July 31, 2001, the jury returned a verdict for Dr. Loomis. The jury assessed 100% of the fault to the Hospital and none against Dr. Loomis. The jury awarded Dr. Loomis $16,950,000 that constituted damages for loss of income, pain and suf-

---

2. The Hospital's instruction read, in relevant part: Licensees enter premises for their own convenience and at their own risk and enter the property as they find it. The owner owes a licensee the duty to refrain from willfully or intentionally injuring him or acting in a manner that will increase the licensee's peril. Appellant's App. p. 571.

fering, and medical expenses. The Hospital now appeals.

## DISCUSSION AND DECISION

### I. Motion for Judgment on the Evidence

The Hospital contends that the trial court abused its discretion in denying the Hospital's motion for judgment on the evidence. Specifically, the Hospital argues that it had no notice of any dangerous condition in the pantry and that it exercised reasonable care in keeping the premises safe. The Hospital also maintains that Dr. Loomis failed to show that the Hospital's negligence proximately caused his injuries.

■ When reviewing the grant or denial of a motion for judgment on the evidence, this court uses the same standard as the trial court. *Schloot v. Guinevere Real Estate Corp.*, 697 N.E.2d 1273, 1275 (Ind.Ct. App.1998). This court has held that " 'a judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff, that is, that the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the defendant.' " *Id.* (quoting *Hampton v. Moistner*, 654 N.E.2d 1191, 1193 (Ind.Ct.App.1995)).

### A. Notice

The Hospital argues that no evidence was offered to support a finding that it had notice that the 4–East pantry presented a danger. Appellant's Br. p. 31. Specifically, the Hospital argues that its employees did not notify it of a dangerous condition because the employees themselves did not consider the pantry to be dangerous.

■ This court has held that the issue of notice of a dangerous condition is an issue of fact for the jury. *Schloot*, 697 N.E.2d at 1276. For the Hospital to pre-

vail on a motion for judgment on the evidence "there must not have been *any evidence or reasonable inferences* that [the defendant] failed to exercise reasonable care." *Id.* (emphasis added). Additionally, the evidence put forth by the plaintiff to defeat a defendant's motion for judgment on the evidence need not be conclusive, only sufficient to create a reasonable inference that defendant knew of and should have remedied the dangerous condition. *Id.*

This court has held that employees' knowledge of a dangerous condition may be imputed to their employer. *Southport Little League v. Vaughan*, 734 N.E.2d 261, 275 (Ind.Ct.App.2000). In *Vaughan*, a director of the Little League molested a child involved in the baseball program. The child sued the Little League, alleging negligence. At the trial's close, the trial court gave an instruction over the Little League's objection that the knowledge of the Little League's employees could be imputed to the Little League itself. The jury returned a verdict for Vaughan, and the Little League appealed. The Little League argued that no employee had knowledge of the director's propensity to molest children. This court upheld the jury's verdict, noting that the plaintiff had "presented substantial evidence at trial that employees and agents of the Little League gained knowledge about [the director], a Little League official, which should have raised a 'red flag.' " *Id.* The *Vaughan* court noted that a groundskeeper had seen the director "inappropriately hugging a child." *Id.* Players' mothers had complained that the director was personally fitting their children for uniforms even though they knew their children's uniform sizes. Another Little League official had seen the director "sitting in a parked car in Garfield Park, an area

known for its homosexual activity." *Id.* at 276.

■ In arguing that it had no notice of the floor's dangerous condition, the hospital notes that Laura Mitchell, a nurse that works on 4–East; Lisa Bihm; and Virginia Happe, director of the Ortho–Neuro surgical unit at the Hospital, all testified that no one had fallen in the pantry before. Tr. p. 439, 631, 643. While acknowledging that at least nine nurses testified that they had seen ice or water occasionally on the pantry floor, the Hospital notes that the nurses would clean the ice or water off the floor when this occurred. Tr. p. 435, 460, 477, 523, 527, 531, 543, 550, 568. Finally, the Hospital observes that the nurses who slipped neither reported the slips nor prepared incident reports because they did not consider the pantry to be dangerous. Tr. p. 436, 456, 474, 491–92, 523, 533, 544, 569.

While the Hospital's argument holds merit, it did not entitle the Hospital to judgment on the evidence. In this case, twelve employees, including the chairman of the Hospital's safety committee, testified that water or ice was occasionally on the floor of the pantry. Appellee's Br. p. 7–8. Additionally, eight employees testified that they had slipped in the pantry. Tr. p. 436, 456, 474, 491–92, 523, 533, 544, 569. Thus, just as did the Little League employees in *Vaughan,* the Hospital's personnel gained knowledge about the pantry that should have raised a "red flag." *Id.* at 275. The evidence provided at least a reasonable inference that the Hospital knew or should have known about the danger posed by the pantry floor. Therefore, the trial court committed no error in rejecting the Hospital's motion for judgment on the evidence. *Schloot,* 697 N.E.2d at 1275.

### B. Exercise of Reasonable Care

The Hospital argues that no evidence supports a finding that it failed to exercise reasonable care in managing the condition of the pantry's floor. Appellant's Br. p. 34. Specifically, the Hospital argues that it equipped the pantry with a slip-resistant floor, cleaned the floor daily, and inspected the floor twice per month. Tr. p. 561, 1346. No accidents in the pantry had been previously noted. Tr. p. 1348–50.

■ Whether a defendant has breached its duty of care is generally a question of fact. *MacDonald v. Maxwell,* 655 N.E.2d 1249, 1251 (Ind.Ct.App.1995). The Hospital was required to show that *no evidence or inferences therefrom* supported the conclusion that the Hospital breached its duty. *Schloot,* 697 N.E.2d at 1275 (emphasis added).

Our supreme court has held that a showing that a knowable dangerous condition exists can support a finding that the defendant failed to exercise reasonable care. *F.W. Woolworth Co. v. Moore,* 221 Ind. 490, 496, 48 N.E.2d 644, 646 (1943). In *Moore,* a store patron tripped on a staircase that had a metal strip extending a quarter inch from a step's surface. The store manager testified at trial that the stairs had not been altered for at least one year, and a janitor testified that he cleaned the stairs twice each day. The jury returned a verdict for the plaintiff. On appeal, Woolworth's argued that the jury's verdict was contrary to the evidence because it could not have known that the staircase was faulty, as no one had ever tripped on the steps. The store, therefore, claimed that it did not fail to exercise reasonable care. Our supreme court noted that the record showed that the metal strip could have easily been found through reasonable inspection. *Id.* Additionally, the manager's and janitor's testimony created a reasonable inference that Wool-

worth's knew about the condition of the step. *Id.* The court then held that such an inference could support a finding that Woolworth's failed to exercise reasonable care in failing to repair the step. *Id.*

In like manner, the water on the pantry floor could have easily been found through reasonable inspection. Several employees knew of the presence of water or ice on the floor (see *Notice, supra*). Here, Dr. Loomis's expert witness regarding safety standards of the Joint Commission on Hospital Accreditation of Healthcare Organizations testified that "there was a constant problem, a regular problem with water or ice on the floor in that room." Appellee's App. p. 219. The witness also testified that he had recommended that non-slip floor mats be placed on the 4–East pantry floor and that such an action would have "substantially reduced the hazard" of slipping. Appellee's App. p. 224–25. The Hospital's failure to act even though it had notice of the dangers of the 4–East pantry is sufficient to support the jury's finding that the Hospital failed to exercise reasonable care. *Id.* Thus, the trial court committed no error in refusing to grant the Hospital's motion for judgment on the evidence.

### C. Proximate Cause

The Hospital maintains that Dr. Loomis put forth no evidence of what caused him to fall and that Dr. Loomis's claim that water caused him to fall is "pure speculation." Appellant's Br. p. 39. The Hospital notes that Dr. Loomis admitted that he had not looked at the pantry floor the day he fell. Tr. p. 323–24. Stephanie Fields, a nurse at the Hospital, testified that she was in the pantry shortly before Dr. Loomis's fall and saw no ice or water on the floor. Tr. p. 570.

The Hospital is correct in arguing that speculative evidence is inadequate to support a finding of proximate causation and, therefore, negligence. Appellant's Br. p. 37 (citing *Midwest Commerce Banking Co. v. Livings*, 608 N.E.2d 1010, 1013 (Ind.Ct.App.1993)). In *Livings*, this court affirmed summary judgment for the defendant when the plaintiff admitted that she did not know what caused her fall and put forth no evidence as to what may have caused her accident. *Id.*

In this case, however, Dr. Loomis testified, "The water on my back was where I slipped. I fell on the water that I slipped on." Appellee's App. p. 25. Additionally, Dr. Loomis testified that the back of his surgery scrubs was wet. Appellee's App. p. 23. Finally, Lisa Bihm, who completed the incident report after Dr. Loomis's fall, indicated in the incident report that she believed the accident happened because of "H2O on floor." Appellee's App. p. 205.

In *Livings*, no evidence was put forth regarding the cause of the plaintiff's fall, and the plaintiff admitted that she was speculating as to the cause of her fall. *Id.* Here, Dr. Loomis's testimony and Bihm's report suggest that water was involved in causing the accident.

The evidence presented at trial is not "susceptible of only one inference" in the Hospital's favor. *Schloot*, 697 N.E.2d at 1275. Given the evidence presented, a reasonable jury could infer that water on the pantry floor caused Dr. Loomis's fall. Thus, the trial court committed no error in rejecting the Hospital's motion for judgment on the evidence.

### II. Dr. Loomis's Status

The Hospital argues that the trial court abused its discretion by refusing to give a jury instruction on the duties owed to a licensee. Specifically, the Hospital contends that "the jury needed to decide whether Dr. Loomis was an invitee or a

licensee." Appellant's Br. p. 46. Additionally, the Hospital assigns error to the trial court's determination that Dr. Loomis was an invitee, maintaining that the evidence presented showed that Dr. Loomis was a licensee.

■■■ We first note that the decision to give or deny a tendered jury instruction is left to the discretion of the trial court. *Morgen v. Ford Motor Co.*, 762 N.E.2d 137, 140 (Ind.Ct.App.2002). When reviewing a trial court's refusal to give a jury instruction, this court will inquire (1) whether the instruction correctly states the law; (2) whether the evidence in the record supports the instruction; and (3) whether the essence of the instruction is contained in other instructions given by the trial court. *Compton v. Pletch*, 561 N.E.2d 803, 805 (Ind.Ct.App.1990). An abuse of discretion occurs only when a trial court's decision is against the logic and effect of the facts and circumstances before the trial court or the reasonable inferences to be drawn therefrom. *Harris v. Smith*, 752 N.E.2d 1283, 1289 (Ind.Ct.App.2001).

Our supreme court has held that the standard of care that will be imposed on a defendant in a premises liability case is dictated by the plaintiff's status on the land when an injury occurs. *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind.1991). Moreover, this court has held that the determination of "a person's status on the land, along with the duty owed, is a matter of law for determination by the trial court, not the jury." *Smith v. Syd's, Inc.*, 570 N.E.2d 126, 132 (Ind.Ct.App.1991).

■■■ The Hospital claims that "a party is entitled to an instruction on his theory of the case if warranted by the issues and evidence presented." *Carroll v. Statesman Ins. Co.*, 493 N.E.2d 1289, 1294 (Ind.Ct.App.1986). This statement of law is undoubtedly correct. However, the "is-

sue" of a plaintiff's status on the land does not warrant such an instruction but is an issue solely for the trial court, as this court has held. *Smith*, 570 N.E.2d at 132.

■■■ In exercising its discretion in whether to give the Hospital's instruction, the trial court had to decide whether the evidence in the record supported the Hospital's instruction. A person is an invitee if "the possessor [of land] encourages another to enter to further his own purpose such that there arises the implicit assertion that reasonable care has been exercised to make the place safe for the one who came for that purpose." *Burrell*, 569 N.E.2d at 641 (quoting *Mullins v. Easton*, 176 Ind.App. 590, 594–95, 376 N.E.2d 1178, 1181 (1978)). Additionally, to retain invitee status, "the invitee must use the owner's premises in the usual, ordinary, and customary way." *Markle v. Hacienda Mexican Rest.*, 570 N.E.2d 969, 974 (Ind.Ct.App.1991) (quoting 65 C.J.S. *Negligence* § 63(52) (1966)).

■■■ The Hospital admits that Dr. Loomis was an invitee before he entered the 4–East pantry. Appellant's Br. p. 43. However, the Hospital argues that Dr. Loomis exceeded the scope of his invitee status upon entering the pantry, as signs posted on the pantry doors read "Employees Only." Tr. p. 421. Dr. Loomis was not an employee of the Hospital but did refer patients to St. Mary's, where he performed their surgeries. Appellee's App. p. 1.

The evidence presented at trial, however, showed that the signs on the pantry doors were not meant to exclude the physicians. Keith Kahre, chairman of the Hospital Safety Committee, testified that the signs were "a courtesy [sic] way of telling families, patients, and visitors that this is an area that you should not be in." Appellee's App. p. 159. Additionally, the Hospital admitted that Dr. Loomis used the 4–

East pantry from 1993 until the date of the accident but that it never asked him or other physicians to leave during that time. Appellant's Br. p. 12. The director of the 4–East floor, Candi Cauvel, testified that doctors would use the pantry but were never asked to leave. Appellee's App. p. 138.

The record shows that it was "usual, ordinary, and customary" for physicians to use the pantry. *Id.* Thus, the trial court decided that an invitee instruction was warranted. The court's decision that Dr. Loomis was an invitee is not "against the logic and effect of the facts and circumstances" presented at trial. *Harris*, 752 N.E.2d at 1289. Thus, the court did not abuse its discretion in rejecting the Hospital's tendered licensee instruction and instructing the jury that Dr. Loomis was an invitee.

## III. Damages

■■■ The Hospital argues that the jury's award of $16,950,000 in damages was excessive. Specifically, the Hospital argues that the jury award was artificially inflated by evidence of Dr. Loomis's practice's earnings and by a speculative work-life expectancy. The Hospital also maintains that the jury's finding that it was 100% at fault is contrary to the evidence.

In addressing this issue, we first note that our supreme court recently held that "a jury determination of damages is entitled to great deference when challenged on appeal." *Sears Roebuck and Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind.2001). The *Manuilov* court noted that "if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed." *Id.*

### A. Use of Past Earnings in Earnings Projections

■■■ The Hospital argues that the jury's award was based on mere speculation. Specifically, the Hospital alleges that the income figures used by Dr. Loomis's experts included the fees generated by Dr. Loomis's associates. Each associate in Dr. Loomis's practice stayed only briefly, and Dr. Loomis had no assurance that he could recruit another associate because nationwide only ninety neurosurgeons graduated each year. Appellant's Br. p. 48.

This court has held that the "basic measure of damages for lost earnings capacity is the difference between the amount which the plaintiff was capable of earning before the injury and the amount which he was capable of earning thereafter." *State v. Totty*, 423 N.E.2d 637, 646 (Ind.Ct.App. 1981). The income history used by Dr. Loomis's experts to project his future earnings included two years when Dr. Loomis practiced alone. Appellee's App. p. 374. In their average yearly earnings calculations, economist Terrance C. Parks and Certified Public Accountant Gregory G. Meyer, the experts who projected Dr. Loomis's future earnings, included two years in which Dr. Loomis had no associates. Appellee's App. p. 298, 384. By including this data in their estimates, the experts provided for the possibility that Dr. Loomis would have no associates at certain times in the future. Thus, the experts, following this court's pronouncement in *Totty*, used "the amount which the plaintiff was capable of earning before the injury" to arrive at their estimates of future earnings. *Totty*, 423 N.E.2d at 646.

■■■ On review, we will not disturb a jury damage award unless the record is totally devoid of evidence supporting the amount of the award. *Manuilov*, 742 N.E.2d at 462. Since the experts' earnings projections included years in which

Dr. Loomis had no associate, we cannot say that the record is wholly devoid of evidence of what Dr. Loomis was capable of earning. Thus, the evidence is not so speculative as to require that the jury's award be reduced.

### B. Fees Generated by Loomis's Practice

■ The Hospital alleges that the jury erred in its damages calculation by taking into account not only Dr. Loomis's individual efforts but also profits generated by Dr. Loomis's investment of capital and employment of others. Appellant's Br. p. 50. Specifically, the Hospital argues that Dr. Loomis relied upon other employees to produce up to one-half of the fees generated by his practice. Appellant's Br. p. 51.

Our supreme court has held that a physician should be allowed "to prove what his *practice* had been worth prior to the injuries." *Carthage Turnpike Co. v. Andrews*, 102 Ind. 138, 1 N.E. 364, 368 (1885) (emphasis added). Dr. Loomis's experts testified that they used Dr. Loomis's tax returns, which included amounts earned by his *practice*, to extract earnings data for use in their projections. Tr. p. 825, 862. The Hospital shed light on this fact and argued that Dr. Loomis's practice was worth much less than the expert witnesses calculated because of his employment of associate physicians: "When he's by himself and all of his partners have left him, he's making about six hundred thousand a year isn't he? But they want you to believe he's going to lose 1.2 million." Tr. p. 1421. The jury, as was its right, merely chose to believe Dr. Loomis's experts and valued Dr. Loomis's practice at a higher figure.

Since the experts' valuation of Dr. Loomis's practice support the jury's award, we will not disturb the award on appeal. *Manuilov*, 742 N.E.2d at 462.

### C. Work Life Expectancy

■ The Hospital argues that the jury's award was artificially inflated because the expert witnesses' calculations included "unsupportable" work-life expectancies. Appellant's Br. p. 53. Specifically, the Hospital argues that Dr. Loomis's prior injuries impaired his ability to perform surgery before the fall in the pantry. Appellant's Br. p. 53.

Dr. Loomis's existing injuries were not kept hidden from the jury. Dr. Loomis testified that he developed pain from his "tennis elbow" two years before his accident. Appellee's App. p. 77. The Hospital argued that even before his fall Dr. Loomis's arm pain was causing him to "slid[e] down the slippery slope of never being able to perform surgery again well before this fall." Tr. p. 1422.

The jury also heard evidence that Dr. Loomis's arm was fine before the fall. His "tennis elbow" pain was "completely gone" after surgery. Appellee's App. p. 82. He was performing surgeries the month before his accident. Appellee's App. p. 102. The day of his fall, he performed a delicate surgery on the neck of a patient. Appellee's App. p. 3. Dr. Perry testified that the surgery to repair Dr. Loomis's "tennis elbow" was successful. Appellee's App. p. 241.

■ Evidence in the record supports the jury's award. The evidence was conflicting as to the state of Dr. Loomis's arm before his fall, but conflicting evidence is insufficient to disturb a jury's damage award, inasmuch as we view the evidence that was favorable to the judgment. *Manuilov*, 742 N.E.2d at 462.

### D. Comparative Fault

■ The Hospital argues that the jury's finding that it was 100% at fault is not supported by the evidence inasmuch as

Dr. Loomis failed to exercise due care for his own safety by not looking at the floor for possible dangers. Appellant's Br. p. 39.

■ We note that the apportionment of fault is uniquely a question of fact to be decided by the fact-finder. *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind.Ct. App.1995). The point where apportionment of fault becomes an issue of law solely for the trial court "is reached only when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion." *Id.*

The Hospital, citing a Louisiana case, alleges that Dr. Loomis had a duty to observe the floor. *Lloyd v. TG & Y Stores Co.*, 556 So.2d 629, 635 (La.Ct.App.1990). The *Lloyd* court held as follows:

> A customer has the duty to see and avoid *obvious* hazards. However, in examining the evidence in these types of cases, the court will take cognizance of the natural tendency of the shopper to focus on the displayed merchandise rather than down at the floor in front of him.
>
> *Id.* (emphasis added).

In *Lloyd*, the plaintiff slipped on a spill "the size of a large pizza, and yellowish in color on a white floor." *Id.* Here, Dr. Loomis slipped on a light tan floor. Appellee's App. p. 20. The substance he slipped on is alleged to be water, not a yellowish liquid. Appellee's App. p. 25. Dr. Loomis did not amble across the floor in a careless manner but "picked [the pot] up, turned, and took a step or two" before slipping. Appellee's App. p. 21.

While perhaps the pizza-sized, yellowish liquid on the white floor was an obvious hazard in *Lloyd*, the evidence is not so clear in this case. The evidence presented is not such that "there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion." *Hampton*, 654 N.E.2d at 1195. Thus, a jury could reasonably find that Dr. Loomis bore no responsibility in causing the accident.

### CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the trial court did not err in denying the Hospital's motion for judgment on the evidence and in refusing to give a jury instruction regarding the duties owed to a licensee. We also conclude that the jury's damage award was not excessive.

Judgment affirmed.

VAIDIK, J., and BARNES, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on December 17, 2002, marked Memorandum Decision, Not for Publication.

Comes now the Appellant, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein, *inter alia*, that the Memorandum Decision in this appeal clarifies a rule of law concerning premises liability law; that the opinion involves unique legal issues that affect a large number of Indiana litigants and therefore the decision meets the standard of a decision that shall be published under Appellate Rule 65(A).

The Court having examined the Appellant's said Motion, having reviewed its opinion in this case and being duly advised, now finds that Appellant's Motion to Publish Opinion should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this case on December 17, 2002, marked

Memorandum Decision, Not for Publication, is now ordered published.