**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Mar 31 2014, 6:19 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL P. PRITCHETT**
State Farm Litigation Counsel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES R. FISHER**
**DEBRA H. MILLER**
Miller & Fisher, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LILA MARQUEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1306-CT-486 |
| | ) | |
| RENE KOBLER, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1107-CT-26334

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Lila Marquez appeals the trial court's entry of judgment on the evidence against her on the issue of liability for the accident in which her vehicle collided with Rene Kobler as he was riding his bicycle. Marquez argues that there was sufficient evidence that Kobler's negligence contributed to the accident such that the issue of comparative fault should have been sent to the jury.

We affirm.

## FACTS AND PROCEDURAL HISTORY

This case involves a vehicle/bicycle collision at the intersection of Sheila Drive and U.S. Highway 36 ("Pendleton Pike") in Indianapolis, Indiana at about 8:45 a.m. on December 8, 2010. A surveillance camera positioned just to the south of the intersection captured the incident on video. Conditions that day were clear and dry. The intersection is basically flat. Marquez was driving her daughter to elementary school, and Kobler was biking to work, as he did each day.

The videotape of the accident reveals that Kobler was biking westbound on Pendleton Pike toward Sheila Drive, and he was on the southern side of Pendleton Pike, which at that location is a divided four-lane road. He stopped his bike at the southeast corner of the intersection to wait for the light to turn green, intending to head northbound on Sheila Drive. After he was stopped, Marquez's vehicle is seen heading southbound on Sheila Drive, approaching Pendleton Pike. She pulled up and stopped behind another vehicle that was already stopped at the red light. Marquez activated her left turn signal and waited for the light to change. Both Marquez and the vehicle in front of her were waiting

to turn left (east) onto Pendleton Pike.  Marquez was stopped at the intersection for approximately fifteen seconds before the light changed to green.

The videotape shows that when the light turned green,[1] Kobler immediately began pushing the ground with his foot to gain momentum on his bicycle, moving forward (north) from the southeast corner of the intersection.  The vehicle that had been positioned in front of Marquez turned left onto eastbound Pendleton Pike.  The vehicle passed in front of Kobler and continued driving eastward as Kobler headed north.  Marquez observed no oncoming traffic, and she proceeded to turn left onto Pendleton Pike, at that point colliding with Kobler on his bicycle.  Right before impact, Marquez applied her brakes.  Kobler fell onto the hood of the car and then slid to the ground.  Police responded to the scene, and an ambulance transported Kobler to the hospital.

In July 2011, Kobler filed a lawsuit against Marquez, alleging Marquez was negligent in the operation of her vehicle.  In her answer, Marquez denied liability and asserted as an affirmative defense that Kobler's negligence proximately caused or contributed to the accident.

At the jury trial, Marquez testified that she looked for oncoming traffic before making her left turn, but did not see Kobler until immediately before the collision.  She acknowledged that she had viewed the videotape of the accident and that it was accurate.  Kobler testified that he did not remember a vehicle turning left onto Pendleton Pike before

---

[1] There was not a left-turn arrow at the intersection.

3

Marquez's vehicle hit him. Like Marquez, he testified that the video fairly and accurately depicted the incident.

As part of Kobler's evidence, the surveillance videotape that captured the accident was played for the jury. Kobler and Marquez both testified that the video completely and accurately depicted the accident as it happened that day. At the conclusion of the first day's evidence, Kobler orally moved for judgment on the evidence on the issue of liability, alleging that there was no evidence that Kobler contributed to the accident. The trial court took the matter under advisement in order to view the videotape.[2] The following morning, the trial court granted Kobler's motion, finding that Marquez was 100% at fault and that there was no issue for the jury to decide with regard to liability.[3] The trial proceeded on the issue of damages. Prior to deliberations, the trial court instructed the jury that the issue of comparative fault was being removed from its consideration and that Marquez was at fault as a matter of law. The jury returned a damages award to Kobler.

Marquez filed a motion to correct error, alleging that the trial court erred when it removed the issue of liability from the jury. Following a hearing, the trial court denied the motion, and Marquez now appeals.

## DISCUSSION AND DECISION

The decision to grant or deny a motion for judgment on the evidence is a matter within the broad discretion of the trial court, and, therefore, the trial court's determination

---

[2] The location of the trial judge's chair at the bench did not permit her to view the tape at the same time as the jury watched it during trial.

[3] The trial court noted that it had viewed the videotape "on multiple occasions before granting [Kobler's] motion." *Appellant's App*. at 13.

will be reversed only for an abuse of that discretion. *Luphahla v. Marion Cnty. Sheriff's Dep't*, 868 N.E.2d 1155, 1157 (Ind. Ct. App. 2007). When reviewing a trial court's ruling on a motion for judgment on the evidence, this court uses the same standard as the trial court. *Cavens v. Zaberdac*, 849 N.E.2d 526, 529 (Ind. 2006). Pursuant to Indiana Trial Rule 50(A), judgment on the evidence is proper "[w]here all or some of the issues in a case . . . are not supported by sufficient evidence," and in such a case, the trial court "shall withdraw such issues from the jury." The test for determining whether "sufficient evidence" exists for an issue to go to a jury involves both a quantitative and qualitative analysis:

> Evidence fails quantitatively only if it is wholly absent; that is, only if there is no evidence to support the conclusion. If some evidence exists, a court must then proceed to the qualitative analysis to determine whether the evidence is substantial enough to support a reasonable inference in favor of the non-moving party. Qualitatively, . . . [evidence] fails when it cannot be said, with reason, that the intended inference may logically be drawn therefrom; and this may occur either because of an absence of credibility of a witness or because the intended inference may not be drawn therefrom without undue speculation.

*Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 840 (Ind. 2012) (citations and quotations omitted).

Upon review of the trial court's determination, we examine only the evidence most favorable to the non-movant, as well as the reasonable inferences that may be drawn from that evidence. *Luphahla*, 868 N.E.2d at 1157. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Cavens*, 849 N.E.2d at 529. Where the issue involves a conclusion of law based on undisputed facts, the reviewing court is to determine the matter as a question of law in conjunction

5

with the motion for judgment on the evidence, and to this extent, the standard of review is de novo. *Id.*

In this case, Kobler made a claim sounding in negligence against Marquez, who asserted as an affirmative defense that Kobler was contributorily negligent through his own "careless and negligent acts, conduct, omissions, or other fault." *Appellant's App.* at 17. The trial court's decision to grant Kobler's motion for judgment on the evidence precluded the issue of comparative fault from reaching the jury, and Marquez on appeal contends that she should have been allowed to present her defense asserting that Kobler's negligence contributed to the accident.[4]

Indiana's Comparative Fault Act ("the Act") "governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property." "Fault" is specifically defined for the purposes of the Act as:

> an act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

Ind. Code § 34-6-2-45. Under the Act, proportional liability is determined by allocating a percentage of "fault" to the claimant, the defendant(s), and any nonparty. Ind. Code § 34-51-2-7(b).

---

[4] It is not entirely clear whether, in addition, Marquez is claiming that she was not negligent when she hit Kobler, as she offers a substantial amount of argument in her brief concerning the reasonableness of her actions. However, we agree with Kobler that the narrow issue on appeal is not whether Marquez was negligent, but whether the trial court erred when it granted Kobler's motion for judgment on the evidence and, thereby, withdrew from the jury's consideration the determination and apportionment of fault.

Where the Act applies, it operates to diminish a claimant's recovery by the amount of the claimant's contributory fault and bars recovery altogether in situations where the claimant's contributory fault is found to be greater than the fault of all other persons whose fault proximately contributed to the claimant's damages. Ind. Code § 34-51-2-6(a). Generally, the apportionment of fault is uniquely a question of fact to be decided by the fact-finder. *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis,* 783 N.E.2d 274, 285 (Ind. Ct. App. 2002). However, "the point where apportionment of fault becomes an issue of law solely for the trial court 'is reached only when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion.'" *Id.* (quoting *Hampton v. Moistner,* 654 N.E.2d 1191, 1195 (Ind. Ct. App. 1995)).

Indiana Code section 9-21-3-7, concerning the regulation of motor vehicles at traffic signals, states that vehicles turning left at a green light must "yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent sidewalk at the time the signal is exhibited." Ind. Code § 9-21-3-7(b)(1)(B). Indiana Code section 9-21-8-30 further governs regulation of traffic at intersections and establishes the right-of-way in the context of making left turns. It states in pertinent part:

> A person who drives a vehicle within an intersection intending to turn to the left shall yield the right-of-way to a vehicle approaching from the opposite direction that is within the intersection or so close to the intersection as to constitute an immediate hazard.

Ind. Code § 9-21-8-30. Under this statute, Kobler possessed the right-of-way at the Pendleton Pike and Sheila Drive intersection.

7

Marquez claims that Kobler contributed to the accident because, when the light turned green, "he meander[ed] . . . toward the northeast," which "put him not in a position that gave him the right of way." *Appellant's Br*. at 8. Specifically, Marquez describes that, after Kobler pushed with his foot to gain momentum, he steered to the right (east) as the first car turned left and moved through the intersection, conceding that after that unidentified car completed its turn, Kobler steered back to the north so that his bicycle was perpendicular to the front of Marquez's car. As the trial court observed, this case is very unique in the sense that the entire accident was captured on video. The tape reveals that Kobler waited until the light turned green, and then he proceeded across the intersection from his starting point, at a normal rate of speed and in a normal and essentially straight path across the intersection, contrary to Marquez's claim that he meandered eastward and out of a position he would be expected to be for a person traveling north; rather, any movement that Kobler made northeastward was insignificant and simply was part of his navigating forward from a stopped position in order to gain momentum and get through the large intersection. It did not place him out of the intersection or otherwise remove his possession of the right-of-way. As Kobler argued, and we agree, "[t]here is no duty on the part of the party with the right of way at an intersection (Kobler) to anticipate and to keep a lookout for another motorist who negligently fails to yield that right of way (Marquez)." *Id*. at 4; *see also id*. at 15-16 (citing *McDonald v. Lattire*, 844 N.E.2d 206, 213 (Ind. Ct. App. 2006) for proposition that party with right-of-way does not owe duty to anticipate non-preferred driver's failure to yield right-of-way).

Marquez also claims that Kobler's actions contributed to the accident and were "unreasonable" because he approached the intersection by pedaling westbound on the south side of Pendleton Pike, which was against eastbound traffic. *Id*. at 4. What occurred prior to the accident is irrelevant to the issue of whether Kobler's negligence contributed to the collision between Marquez's vehicle and Kobler's bicycle. Indeed, Kobler had already reached the southeast corner and stopped a number of seconds before Marquez approached and stopped at the intersection. Furthermore, the videotape reveals Marquez's position at the stoplight gave her an unobstructed view of Kobler for at least fifteen seconds before the light turned green, although she testified at trial that she did not see him until immediately before her car hit him and she slammed on the brakes.

Marquez next suggests that Kobler may have been inattentive and, therefore, responsible to some degree for the accident, because he did not remember the other vehicle turning eastbound in front of him as he headed north. Marquez asserts that failure to remember the other car's presence raises the inference that he was inattentive and was not acting as a reasonably prudent bicyclist would. Kobler conceded at trial he was nervous, upset, and somewhat confused while testifying, feeling that he was being accused. Regardless, we find that whether he recalled the first vehicle turning left has no effect on the determination at hand. Whether another car did or did not make an eastbound turn before Kobler reached that point in the intersection as he headed north does not affect the determination of whether he contributed to the accident such that it would have been appropriate for the jury to consider an apportionment of fault.

We recognize that, as a general matter, granting a plaintiff's motion for judgment on the evidence on the issue of comparative fault in a negligence action is fraught with peril for trial courts, but this case is the exception. Under the unique circumstances presented here – where it is undisputed that a videotape fully and accurately captured the circumstances of the accident – the trial court correctly determined that there was no evidence constituting, or even suggesting, fault on the part of Kobler that could have allowed a jury to allocate negligence to him. Accordingly, comparative fault was not an issue, and the trial court correctly removed it from the jury's consideration.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.