## FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JERE L. HUMPHREY**
Wyland, Humphrey, Wagner & Clevenger, LLP
Plymouth, Indiana

ATTORNEY FOR APPELLEES:

**DOUGLAS D. SMALL**
Foley & Small
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| HI-TEC PROPERTIES, LLC, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 50A05-1401-CT-14 |
| | ) | |
| BRITTANY MURPHY, KENDALL | ) | |
| MURPHY, LORIE MURPHY, and | ) | |
| JAY FRAZIER, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARSHALL CIRCUIT COURT
The Honorable Curtis D. Palmer, Judge
Cause No. 50C01-1002-CT-4

**July 21, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Hi-Tec Properties, LLC ("Hi-Tec"), appeals the trial court's denial of its motion to correct error following a jury verdict and award of compensatory and punitive damages entered in favor of Brittany Murphy, Kendall Murphy, Lorie Murphy, and Jay Frazier (collectively "Plaintiffs") on their claims for negligence, breach of contract, and fraud against Hi-Tec. Hi-Tec filed a motion to correct error claiming, in essence, that the jury verdict and resulting award of damages was improper and unsupported by the evidence. The trial court denied the motion, and Hi-Tec appealed. Finding a portion of the compensatory damages award to be unsupported by the evidence, we reverse that portion of the award and remand to the trial court with instructions for revision. We affirm the trial court in all other respects.

**Facts and Procedural History**

The relevant facts most favorable to the verdict indicate that Hi-Tec owns an apartment complex in Plymouth, Indiana. The Hi-Tec complex consists of five buildings with twelve apartments each. Of those twelve apartments in each building, four apartments are below-grade. The below-grade apartments have dehumidifiers to remove moisture from the air, and tenants in those apartments are given a twenty-dollar-per-month rent deduction to defray electrical costs for running the dehumidifiers. In August 2009, nineteen-year-old Brittany Murphy and her friend Jay Frazier were enrolled at Ancilla College, a two-year college in Marshall County. Brittany planned to play basketball for Ancilla. Brittany and Jay decided that they would share an apartment during college. Jay traveled to Hi-Tec and met with the on-site apartment manager, Karma Murray, who showed him available units. On a

second trip, Brittany also looked at the units.  Brittany and Jay decided to share one of the below-grade Hi-Tec apartments.  On August 15, 2009, Brittany and her father Kendall Murphy met with Murray, and both signed the lease agreement to rent apartment number 1383, a below-grade apartment.  Although the lease named Brittany and her mother, Lorie Murphy, as "Lessee[s]," Lorie was not present that day and did not sign the lease agreement.  Appellant's App. at 83.[1]

The lease agreement signed by Brittany and Kendall included the following clause:

> 23.  Mold.  Lessee acknowledges that no evidence of mold was observed in the living unit prior to leasing.  Lessee also agrees to notify Lessor in writing within ten (10) days of observing any mold.  Lessor shall then have two (2) weeks within which to remediate the conditions at no cost to Lessee.  As part of the consideration of this lease, **Lessor shall have no personal liability for personal injury or property damage as a result of any mold, fungus, etc.** … Lessor agrees to clean the mold, fungus, etc., from the personal property of Lessee but shall not be liable for any expenses for Lessees having a third party clean or sanitize the personal property or unit.  However, if the mold, fungus, etc. develops because of the Lessee's use of the unit in a way likely to heighten the risk of mold, then Lessor shall have no obligation for cleaning personal property.  **In any event, Lessee releases and agrees to save harmless, Lessor and their agents for personal injury and suffering, mental anguish, medical expenses, lost wages, etc., to themselves and or family members.**

*Id.* at 69 (emphases added).

Thereafter, Brittany and Jay moved into the apartment and lived there.  Brittany paid the rent with the help of her parents.  Jay would "help out when he could."  Tr. at 276.  In late September, Brittany complained to Lorie that she "didn't feel good … was tired all the time … felt congested … just did not feel good."  *Id*. at 151.  Brittany began feeling even

---

[1] The lease is dated August, 14, 2009.  However, it appears that Brittany and Kendall signed the agreement on August 15, 2009.

3

worse in October. She lacked energy and had trouble running at basketball practice. Jay was congested and feeling bad too. Brittany and Jay both had a history of exertion-induced asthma and felt like their asthma symptoms had increased. On Friday, November 6, 2009, Brittany spoke to Lorie on the telephone and, because Brittany and Jay had not been feeling well, Lorie advised Brittany to open the windows in the apartment to get some fresh air. That Sunday, Brittany went to open her bedroom window and discovered mold in the window frame. There was also mold growing on the window side of the blinds. Jay found mold growing on his window frame as well, but not as much as in Brittany's bedroom. Brittany called Lorie, who instructed her to clean the mold with a bleach and water mixture. After cleaning the mold, Lorie called Murray and told her about the mold and asked her advice on how Brittany should clean it. Murray claimed to have no idea how to clean or deal with mold. However, based upon Murray's advice, Jay wrote a letter alerting Hi-Tec to the mold they had discovered in the apartment. Hi-Tec agreed to move Brittany and Jay to an above-grade apartment.

The next weekend, Kendall and Lorie traveled to Plymouth to help Brittany and Jay move to the new apartment. During that week, new mold grew back on the frames of the bedroom windows. Lorie took pictures of the mold and also brought Murray to the apartment to show her the mold. Brittany and Lorie signed a new lease agreement for the rental of an upstairs apartment. During the move, some of Brittany's apartment items and clothing had to be thrown away and other items had to be cleaned. After moving, Brittany continued to experience increased asthma symptoms and headaches. Brittany's family physician, Dr.

4

William Goudy, believed that the mold exposure made Brittany's asthma worse. An infectious disease physician who evaluated Brittany opined that, regarding her increased asthma symptoms, it was "more possible that she is recovering from an allergic reaction to mold exposure." Appellant's App. at 155. Due to her health, Brittany was unable to participate in the basketball season. By the fall of 2010, Brittany was "pretty much back to normal." Tr. at. 169.

On February 12, 2010, Plaintiffs filed their amended complaint for damages against Hi-Tec, alleging that Hi-Tec was negligent in "providing such services and a habitable apartment." Appellant's App. at 40. In addition, Plaintiffs also sought damages against Hi-Tec for fraud, alleging that Hi-Tec had knowledge of prior mold infestations and that Plaintiffs detrimentally relied on Hi-Tec's misrepresentations and omissions. During pretrial proceedings, Plaintiffs also alleged that Hi-Tec was guilty of breach of contract by leasing an apartment with water and mold problems. Hi-Tec answered and raised several affirmative defenses, including comparative fault and that the lease agreement precludes recovery for personal injury as a result of any mold. Hi-Tec also argued that Kendall and Lorie had no viable claims for alleged injuries and/or damages caused to Brittany, their adult daughter. Thereafter, by pretrial order, on October 17, 2013, the trial court determined the "portion of the language in paragraph 23 of the lease relieving the Lessor of liability for personal injury or property damage to be void as against public policy." *Id*. at 52. Thereafter, Hi-Tec filed a motion in limine requesting the court to prohibit Plaintiffs from informing the jury that the court found a portion of the lease void as against public policy. The trial court granted the

motion in limine and redacted the mold exclusion clause, paragraph 23, from the lease agreement. Defendant's Exhibit 16.

A three-day jury trial commenced on October 22, 2013. The jury returned a general verdict finding Hi-Tec 100% at fault and awarded $10,000 in compensatory damages to Brittany and $10,000 to each of her parents. The jury awarded no compensatory damages to Jay.[2] The jury also awarded Brittany $15,000 in punitive damages. Thereafter, Hi-Tec filed a motion to correct error, which the trial court denied. This appeal followed.

## Discussion and Decision

### Standard of Review

Hi-Tec appeals following the denial of its motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 106 (Ind. Ct. App. 2014). We will reverse a trial court's ruling on a motion to correct error "only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law." *Perkinson v. Perkinson,* 989 N.E.2d 758, 761 (Ind. 2013).

### Section 1 – Exculpatory Clause

We begin by addressing Hi-Tec's claim that the trial court erred when it concluded that the exculpatory clause contained in the residential lease signed by Brittany and Kendall, which immunized Hi-Tec against liability for injuries caused by mold, was void as against public policy. We disagree with Hi-Tec.

---

[2] Jay failed to appear at trial.

6

Whether a contract is against public policy in a particular situation is a question of law dependent on the circumstances of the particular case. *Trotter v. Nelson*, 684 N.E.2d 1150, 1152-53 (Ind. 1997). In *Ransburg v. Richards*, 770 N.E.2d 393, 395 (Ind. Ct. App. 2002), *trans. denied,,* we determined that resolution of the question of whether a residential lease provision is void as against public policy turns on "fairly balancing the parties' freedom to contract against the policy of promoting responsibility for damages caused by one's own negligent acts." Looking to other jurisdictions for guidance, we agreed with the reasoning of several courts that have found clauses limiting the landlord's liability for negligence void as against public policy. *Id*. at 399-402. These courts emphasized both the unequal bargaining power between residential landlords and tenants, and the fact that exculpatory clauses in residential leases are public matters rather than private terms "primarily because the rental industry provides basic necessity of life, shelter, to thousands of people." *Id.* at 401-402. Specifically,

> A lease is no longer an isolated contract between one landlord and one tenant. The size of the rental industry is so great that construction of an exculpatory clause has an impact on thousands of citizens. Furthermore, the public has an interest in the quality of housing offered for rent to all members of the public. Enforcement of exculpatory clauses in personal injury cases results in great harm to the public, and thus these clauses do not fall within the exception to the rule that a party may not contract against his or her own negligence.

*Id*. at 402 (quoting *Taylor v. Leedy & Co.*, 412 So. 2d 763, 766 (Ala. 1982) (Faulkner, J. concurring specially)).

Pointing out that residential lease exculpatory clauses contravene long-established rules of tort liability and discourage residential landlords from meeting the duties of

7

reasonable care imposed on them by law for the protection of society, we determined that "[t]he best way to promote the exercise of due care is to hold residential landlords liable for their own negligence." *Id.* We concluded that the factors set out by our supreme court that should be balanced when determining whether to enforce a private agreement that is contrary to the declared public policy of Indiana weighed in favor of not enforcing such exculpatory clauses in residential leases. *Id.* (citing *Trotter*, 684 N.E.2d at 1152-53). Indeed, we explained,

> [g]iven the vast number of people clauses like these affect, the inequality of bargaining power caused by the need for housing, the fact that people who are not parties to the contracts could suffer as a result of such clauses, and the desire to promote responsible maintenance by landlords to avoid personal injuries by tenants and third parties, we find that the factors weigh in favor of public policy.

*Id.*

Hi-Tec maintains that the rationale for our decision in *Ransburg* was directed only at "blanket exclusions" of liability for all negligence rather than "the limited area of exculpation relating to mold." Appellant's Br. at 16.[3] Although the exculpatory clause at issue in *Ransburg* sought to immunize the landlord against damages caused by negligence in maintaining common areas, and therefore was a more expansive liability insulation than the mold exclusion at issue here, we are not persuaded that our rationale was so limited. As was the exculpatory clause at issue in *Ransburg*, the current clause immunizing Hi-Tec from

---

[3] We note that the lease here also contained what would be appropriately described as a blanket exculpatory clause seeking to immunize Hi-Tec against any damages caused by its negligence, whatever the source. As with the mold provision, that clause was also redacted from the lease before the lease was viewed by the jury.

liability for damages caused by mold is inconsistent with common-law principles of tort law, as it is well-settled that a landlord may be held liable for personal injuries caused by latent defects known to the landlord but unknown to the tenant and which the landlord fails to disclose. *Erwin v. Roe*, 928 N.E.2d 609, 616 (Ind. Ct. App. 2010).[4]  Such clauses offend the public policy of this state and will not be enforced.

We conclude that the exculpatory clause regarding mold in this residential lease is contrary to public policy insofar as it seeks to immunize Hi-Tec against damages caused by its own negligence.  Therefore, the trial court did not err when it concluded that the exculpatory clause was void as against public policy.

### Section 2 – Comparative Fault

Hi-Tec also contends that the jury's finding that it was 100% at fault for Brittany's injuries is not supported by the evidence.  As a general rule, the apportionment of fault is uniquely a question of fact to be decided by the factfinder.  *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 285 (Ind. Ct. App. 2002).  "The point where apportionment of fault becomes an issue of law solely for the trial court 'is reached only when there is no dispute in the evidence and the fact-finder is able to come to come to only one logical conclusion.'"  *Id*. (quoting *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind. Ct. App. 1995)).

---

[4] Hi-Tec maintains that mold caused by moisture should not be considered a latent defect for purposes of landlord-tenant negligence liability.  Hi-Tec cites no authority for such proposition and, as shown by its verdict, the jury clearly disagreed with Hi-Tec on this issue.

Hi-Tec points to Brittany's decision to rent a below-grade apartment despite her asthma and Kendall's and Lorie's decision to continue to smoke around their asthmatic daughter as evidence of Plaintiffs' comparative fault. This is merely an invitation for us to invade the province of the jury, which we will not do. The evidence presented by the parties was neither undisputed nor supportive of only one logical conclusion. Therefore, the jury could reasonably find that Plaintiffs bore no fault in causing Brittany's injuries. The trial court did not abuse its discretion when it denied Hi-Tec's motion to correct error on this issue.

### Section 3 – Compensatory Damages Award

We next address the jury's compensatory damages award of $10,000 each to Brittany, Kendall, and Lorie. Hi-Tec claims that the awards were improper and unsupported by the evidence. "A jury determination of damages is entitled to great deference when challenged on appeal." *Lifeline Youth & Family Servs., Inc. v. Installed Bldg. Prods., Inc.*, 996 N.E.2d 808, 813 (Ind. Ct. App. 2013) (quoting *Sears Roebuck and Co. v. Manuilov,* 742 N.E.2d 453, 462 (Ind. 2001)). Our supreme court has summarized the applicable standard of review as follows:

> Damages are particularly a jury determination. Appellate courts will not substitute their idea of a proper damage award for that of the jury. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed.

10

*Id*. (quoting *Prange v. Martin,* 629 N.E.2d 915, 922 (Ind. Ct. App. 1994), *trans. denied* (citations omitted)).  Additionally, the court has noted:

> Our inability to actually look into the minds of the jurors is, to a large extent, the reason behind the rule that we will not reverse if the award falls within the bounds of the evidence. We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous.

*Id.* (quoting *Annee v. State,* 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971)).

We note that the jury's assessment of damages here is part of a general verdict that does not specify the legal theory upon which each award of compensatory damages was based.  Accordingly, we will address the respective compensatory damage awards pursuant to Plaintiffs' claims of negligence, breach of contract, and fraud.

### Section 3.1 – Negligence

It is well established that negligence damages are awarded to compensate an injured party fairly and adequately for the loss sustained.  *Bader v. Johnson,* 732 N.E.2d 1212, 1220 (Ind. 2000).  "Broadly stated, the person injured by the negligence of another is entitled to reasonable compensation."  *Ritter v. Stanton*, 745 N.E.2d 828, 843 (Ind. Ct. App. 2001), *trans. denied* (2002), *cert. denied*.  "Reasonable compensation" refers to an amount that would reasonably compensate the plaintiff for bodily injury and for pain and suffering and also takes into account past, present, and future expenses reasonably necessary to the

11

plaintiff's treatment. *Foddrill v. Crane*, 894 N.E.2d 1070, 1079 (Ind. Ct. App. 2008), *trans. denied* (2009).[5]

The evidence most favorable to the jury's verdict indicates that Brittany suffered personal injuries due to mold growth in her apartment caused by latent defects in the apartment, such defects being known to Hi-Tec but unknown to Brittany and which Hi-Tec failed to disclose. The record establishes that from October 2009 through February 2012, Brittany incurred $5222 in medical expenses related to her injuries. In addition to the medical expenses for her injuries, Brittany claimed damages for her pain and suffering. Under the circumstances, the jury's award of $10,000 in compensatory damages to Brittany was reasonable and supported by the evidence.

However, we find the compensatory damages awards to Kendall and Lorie to suffer from a fatal flaw under a negligence theory: insufficient evidence. First, the evidence is undisputed that neither Kendall nor Lorie ever lived, or intended to live, in the apartment, and thus they did not enjoy a relationship with Hi-Tec which would impose a duty in negligence. *See Erwin*, 928 N.E.2d at 616 (tenant may recover for injuries caused by latent defects of which landlord was aware but which were unknown to tenant and not disclosed by landlord). Nevertheless, Plaintiffs seek to justify the jury's award to each of them by arguing that Kendall and Lorie paid Brittany's medical expenses that were incurred due to Hi-Tec's negligence. We agree with Hi-Tec that regardless of who actually paid those expenses,

---

[5] Although not implicated here, "reasonable compensation" also includes all financial losses suffered, or to be suffered, by the plaintiff as a result of the inability to engage in his or her usual occupation. *Foddrill*, 894 N.E.2d at 107.

Brittany is an adult and Brittany is the injured party here. The medical expenses incurred by Brittany are her damages, not her parents'.

Plaintiffs assert that Kendall and Lorie are entitled to compensation for Hi-Tec's negligence because they "bought items for the apartment, which were destroyed or damaged by the mold exposure." Appellee's Br. at 32. Plaintiffs direct us to no evidence in the record to indicate what any of those alleged items were, much less any evidence reflecting even a speculative value for those items. Plaintiffs maintain that Kendall and Lorie should also be compensated because they made telephone calls, met with Hi-Tec management, took trips to and from Plymouth, spent time cleaning, helped Brittany move, and drove Brittany to medical appointments. Kendall and Lorie are essentially seeking speculative damages for their inconvenience in dealing with their adult daughter's injuries. In addition to a complete lack of supporting evidence, the Plaintiffs direct us to no authority, and we are unaware of any, that such damages are compensable absent a legal duty owed to them by Hi-Tec. As there is no evidence to support the jury's compensatory damages awards to Kendall and Lorie pursuant to a negligence theory, we turn to their breach of contract claim.

### 3.2 – Breach of Contract

A party injured by a breach of contract may recover the benefit of the bargain. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003), *trans. denied*. The damages claimed for such a breach must be the natural, foreseeable, and proximate consequence of the breach. *Id.* While an aggrieved party must be compensated, he or she should not be placed in any better position. *Id.* A damage award must be based upon some

fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances. *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993). The damages claimed also must be the natural, foreseeable, and proximate consequence of the breach. *Id*.

"Because a lease is a contract, the essence of the landlord-tenant relationship is contractual in nature." *Ind. Dep't of Natural Res. v. Lick Fork Marina, Inc.*, 820 N.E.2d 152, 157 (Ind. Ct. App. 2005), *trans. denied*, *cert. denied*. We emphasize that the only parties to the lease agreement here were Brittany and Kendall. It is undisputed that Lorie did not sign the lease. Therefore, Lorie had no contractual obligations to Hi-Tec pursuant to the lease, nor Hi-Tec to Lorie. The fact that Lorie completed a rental application and was referred to as a lessee in the lease is of no moment. Consequently, there is no legal basis to support an award of compensatory damages to Lorie on a breach of contract theory.

The evidence most favorable to the verdict indicates that Hi-Tec breached its lease with Kendall and Brittany when it failed to perform its duties pursuant to the lease. The only breach of contract damages alleged in the record were the amount of rent paid to Hi-Tec in the amount of $2360. Although the evidence is conflicting as to who paid the rent, a reasonable jury could have concluded that Kendall paid the lion's share of the rent and that he was entitled to recover the benefit of the bargain pursuant to the lease. Accordingly, there is sufficient evidentiary support for a compensatory damages award to Kendall in the amount of $2360.

14

## Section 3.3 – Fraud

In an action for fraud, the injured party is entitled to compensation for damages suffered as a result of the fraudulent representation. *Stoll v. Grimm*, 681 N.E.2d 749, 758 (Ind. Ct. App. 1997). Damages for fraud are those which are the natural and proximate consequences of the act complained of. *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 482 (Ind. Ct. App. 2001).

As with Kendall's and Lorie's alleged negligence damages, Plaintiffs direct us to no evidence to establish that Kendall and Lorie suffered any damages as a result of Hi-Tec's alleged fraud.[6] Again, Kendall and Lorie are improperly seeking compensation for injuries and losses suffered by their adult daughter. They are not so entitled.

In sum, we conclude that there is an adequate basis in the record to support the jury's $10,000 compensatory damages award to Brittany and the trial court did not abuse its discretion when it denied Hi-Tec's motion to correct error as to her damages. However, the only evidence in the record to support an award to Kendall is for rent paid in the amount of $2360. Accordingly, we remand to the trial court with instructions to revise its judgment and reduce the award to Kendall to that amount. *See* Ind. Appellate Rule 66(C)(4) (appellate court may order the entry of judgment of damages in the amount supported by the evidence). The damages award to Lorie cannot be explained on any reasonable ground, or pursuant to

---

[6] In their brief, Plaintiffs imply that Kendall and Lorie are entitled to damages for the "sorrow and worry" Hi-Tec caused them by renting a mold-infested apartment to their daughter. *See* Appellee's Br. at 32; *Munsell v. Hambright*, 776 N.E.2d 1272, 1281 (Ind. Ct. App. 2002) (a plaintiff may recover emotional distress damages if fraudulent conduct "involves the invasion of a legal right that by its very nature is likely to provoke an emotional disturbance."), *trans. denied* (2003). However, the jury was never instructed on this element of damages, and Plaintiffs direct us to no testimony in the record to support this theory of recovery.

any legal theory, and we therefore reverse that award in total.

## Section 4 – Punitive Damages Award

Finally, Hi-Tec asserts that there was insufficient evidence to support the jury's decision to award punitive damages to Brittany.[7]  Punitive damages are those designed to punish the wrongdoer and to discourage the wrongdoer and others from similar conduct in the future. *America's Directories Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1069 (Ind. Ct. App. 2005), *trans. denied* (2006).  Proof that a tort was committed does not necessarily establish the right to punitive damages.  *Gresser v. Dow Chem. Co.,* 989 N.E.2d 339, 349 (Ind. Ct. App. 2013), *trans. denied.*  "Punitive damages are not commonplace and rarely appropriate" and the "plaintiff has an especially heavy burden of proof at trial."  *Yost v. Wabash College*, 3 N.E.3d 509, 524 (Ind. 2014).  "Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing."  *Gresser*, 989 N.E.2d at 349.  In determining whether sufficient evidence warrants imposition of punitive damages, we do not reweigh the evidence or assess witness credibility and consider only the probative evidence and the reasonable inferences supporting the verdict.  *Stroud v. Lints*, 790 N.E.2d 440, 443 (Ind. 2003).

---

[7] Hi-Tec does not challenge the amount of the punitive damages award.

Here, Plaintiffs presented ample evidence from prior tenants, a contractor, and a maintenance worker which indicated that Hi-Tec had experienced prior issues with moisture and mold in several of its below-grade apartments. Considering only the probative evidence and the reasonable inferences supporting the verdict, a reasonable jury could find by clear and convincing evidence that Hi-Tec's conduct in failing to disclose to Brittany the moisture and mold issues of its below-grade apartments was malicious, fraudulent, grossly negligent, or oppressive, and not merely the result of honest error, overzealousness, mere negligence, or other human failing. We will not second-guess the jury's decision to punish Hi-Tec for such behavior, and we affirm the jury's $15,000 punitive damages award.[8]

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and BARNES, J., concur.

---

[8] Hi-Tec argues that the punitive damages award was "encouraged or motivated by the nature of the altered, blackened and lined through" mold provision that was redacted from the lease exhibits shown to the jury. Appellant's Br. at 25. In response to Hi-Tec's motion in limine requesting that the jury not be informed that the mold provision in the lease was found void as against public policy, the trial court determined that redaction of the provision from the exhibits was an appropriate solution. Hi-Tec did not object to this decision by the trial court or to the subsequent admission of the exhibits as evidence. Failure to object to the admission of evidence at trial results in waiver of any alleged error on appeal. *Reed*, 2 N.E.3d at 107. Thus, Hi-Tec has waived this argument. Moreover, the trial court instructed the jurors that they were not to draw any inferences regarding the redactions. Tr. at 586. "A timely and accurate admonition is presumed to cure any error in the admission of evidence." *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002) (citation omitted). Hi-Tec has established no prejudice or reversible error.