
FILED

Jan 26 2018, 7:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Edward R. Hannon
Graham T. Youngs
Steuerwald, Hannon & Witham, LLP
Danville, Indiana

ATTORNEYS FOR APPELLEE

Thomas R. Schultz
Justin C. Kuhn
Schultz & Pogue, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert A. McAdams, Quinn Whitney and Vonda Whitney,

*Appellants-Plaintiffs,*

v.

Foxcliff Estates Community Association, Inc.,

*Appellee-Defendant*

———————————————

Foxcliff Estates Community Association, Inc.,

*Third-Party Plaintiff,*

v.

Paul Harnishveger, Mary Harnishveger and Chad Gregory,

January 26, 2018

Court of Appeals Case No.
55A04-1707-PL-1707

Appeal from the Morgan Superior Court

The Honorable Brian H. Williams, Judge

Trial Court Cause No.
55D02-1602-PL-174

*Third-Party Defendants.*

**Crone, Judge.**

# Case Summary

Robert A. McAdams, Quinn Whitney, and Vonda Whitney ("the Owners") appeal the trial court's entry of summary judgment in favor of their subdivision's homeowners association, Foxcliff Estates Community Association, Inc. ("the HOA"). The Owners sued the HOA for damages based on the HOA's failure to properly repair and maintain certain drainage ditches in the subdivision as allegedly required by the neighborhood covenants and restrictions. The HOA subsequently moved for summary judgment arguing that the Owners' claim for damages is precluded by an exculpatory clause in the subdivision's covenants and restrictions, and the trial court granted the motion. The sole restated issue for our review is whether the exculpatory clause is unenforceable as a matter of law. Because the Owners have not met their burden to establish that the clause is unenforceable, we affirm summary judgment in favor of the HOA.

# Facts and Procedural History

The HOA is a not-for-profit corporation located in Morgan County and was formed for the "primary purposes to own, construct, manage, maintain,

preserve, repair, and reconstruct the Common Area" of Foxcliff Estates Subdivision ("Foxcliff Estates"). Appellants' App. Vol. 4 at 35. The Amended Articles of Incorporation and Amended Declarations of Covenants and Restrictions ("the Covenants and Restrictions") for Foxcliff Estates provide the following definitions of "Common Area":

> "Common Area" means those areas of land (1) shown on any recorded subdivision plat, (2) described in any recorded instrument or (3) conveyed to or acquired by the [HOA], together with all improvements thereto, which are intended to be devoted to the common use and enjoyment of all the Members, and any utility service lines or facilities not maintained by a public utility company or governmental agency which are located on, over, or below or cross through more than one (1) Parcel.

*Id*. at 140.

> "Common Area" means those areas of land and lakes (1) shown on any recorded subdivision plat, (2) described in any recorded instrument, or (3) conveyed to or acquired by the [HOA], together with all improvements thereto, which are intended to be devoted or dedicated to the common use and enjoyment of all the members; and any drainage facilities which are located on, over, across or through one of more parcels. (i.e. pool, roads, tennis courts, boat launches, dams, other common areas and facilities).

*Id*. at 36.

[3] Regarding the obligations of the HOA, the Covenants and Restrictions provide that the HOA

shall be responsible for the exclusive management and control of the common areas and all improvements thereon (including furnishings and equipment related thereto), and shall keep the same in good, clean, attractive and sanitary condition, order and repair. However, it shall not be the obligation of [the HOA] to maintain and keep free of leaves, sticks, limbs and other debris in the area along the lakeshore and in the water in the immediate vicinity of privately owned lots.

*Id*. at 44. The Common Areas include but are not limited to the cemetery, dams, lakes, the Manor House, recreation facilities (the park, pool, tennis courts, and associated surroundings), roads, and signs. *Id*. at 46-47. As for drainage, the Covenants and Restrictions provide that

[a] lot owner may not use artificial channels or means to divert water from the member's lot to another lot. Each lot owner is responsible to use said property so as to not cause damage to other lots. Appropriate and adequate swales shall be created between adjoining lots that permit proper water drainage.

*Id*. at 53.[1]

[4] Finally, under the title "Enforcement," the Covenants and Restrictions provide,

The [HOA] and any owner shall have the right to enforce, by a proceeding in law or in equity, all restrictions, conditions, covenants, reservations, guidelines, including but not limited to rules or decisions of the Building Control Committee, and any charges or liens now or hereafter imposed by the provisions of

---

[1] While we need not go into detail, the HOA's Building Control Rules and Procedures provide more specific details regarding each homeowner's duty to provide and maintain "[a]dequate roadside drainage ditch, or riprap for steep grades" and "[a]ppropriate and adequate swales." Appellants' App. Vol. 4 at 113.

this Amended Declaration and of Supplementary Declarations, but the [HOA] *shall not be liable in damages of any kind to any person for failure either to abide by, enforce or carry out any of the Restrictions.* No delay or failure by any person to enforce any of these Restrictions or to invoke any available remedy with respect to a violation or violations thereof, shall under any circumstances be deemed or held to be a waiver by that person of the right to do so thereafter, or an estoppel of that person to enact any right available to him upon the occurrence, reoccurrence or continuation of any violation or violations of the Restrictions.

*Id*. at 56-57 (emphasis added).

[5] One of the Owners, McAdams, is the fee title owner of the property known as 4311 North Somerset Drive in Foxcliff Estates. The other Owners, the Whitneys, are the fee title owners of the property known as 4331 North Somerset Drive in Foxcliff Estates. In 2013, Quinn Whitney, and in late 2014, McAdams, complained to the HOA about drainage problems on their respective properties, specifically that water from the higher elevations of land on the west side of Somerset Drive "was not being properly collected in a drainage ditch or culvert and instead was passing across the roadway surface flowing onto their property, saturating it, eroding it and causing serious and unrepairable damage to their homes constructed thereon." Appellants' App. Vol. 2 at 15. In response to complaints by Quinn Whitney, the HOA's Building Control Committee informed him on multiple occasions that it was his responsibility "to address the grade, drainage, and erosion issues" on his property. Appellants' App. Vol. 4 at 163. Similarly, Mike Hendershot, the general maintenance chair for the HOA, informed McAdams that the HOA

was not responsible for diverting water flow from properties and that this was up to each homeowner. After investigation, the HOA believed that most of the water was originating from property owned by Chad Gregory at 4344 North Somerset Drive. The HOA also informed Paul and Mary Harnishveger, the owners of the property located at 4322 North Somerset Drive, that water flow was being blocked in their driveway and that the drainage pipe needed to be cleared.

[6] On February 3, 2016, the Owners filed a complaint for damages against the HOA asserting that the HOA breached its contractual obligations and failed to exercise reasonable care in the performance of its duties pursuant to the Covenants and Restrictions. The HOA filed its answer and a third-party complaint against Gregory and the Harnishvegers as third-party defendants.

[7] Thereafter, the Owners filed a motion for partial summary judgment for declaratory relief, requesting the trial court to declare as a matter of law that the HOA had a "non-delegable duty … to maintain and repair the drainage ditch located on Somerset Drive for the health, safety, and welfare" of the Owners. Appellants' App. Vol. 2 at 108-09. The HOA responded with its own motion for summary judgment asserting, among other things, that a valid and enforceable exculpatory clause contained in the Covenants and Restrictions barred the Owners' claim for damages against the HOA.

[8] The trial court held a hearing on the pending summary judgment motions and, on June 27, 2017, issued its order granting the HOA's motion for summary

judgment and denying the Owners' motion for partial summary judgment. Specifically, the trial court concluded that the Covenants and Restrictions contain a "valid, enforceable and applicable exculpatory clause as relates to any liability of [the HOA] for claims arising under [the Covenants and Restrictions](and resulting secondary documents) defining the rights and obligations of the parties." *Id.* at 12. The court further concluded that the HOA's "liability for any action or inaction regarding its rights or obligations to address water drainage created and governed by [the Covenants and Restrictions] is included within this exculpatory clause." *Id.* This appeal ensued.

# Discussion and Decision

[9] The Owners contend that the trial court erred in denying their motion for partial summary judgment and granting summary judgment in favor of the HOA based upon the exculpatory clause in the Covenants and Restrictions.[2] "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

---

[2] The Owners briefly argue that the HOA waived the ability to enforce the exculpatory clause by not specifically referencing the clause as an affirmative defense in its answer to the Owners' complaint, and instead raising it for the first time in its motion for summary judgment (and response to the Owners' motion for partial summary judgment). *See Paint Shuttle, Inc. v. Cont'l Cas. Co.,* 733 N.E.2d 513, 525 (Ind. Ct. App. 2000) (to avoid waiver, defendant must include within its responsive pleading any affirmative defense it seeks to assert), *trans. denied* (2001). Our review of the pleadings reveals that the HOA sufficiently referenced the Covenants and Restrictions, which included the clause, as an affirmative defense in its answer. Regardless, it is well settled that the trial rules are "designed to avoid pleading traps" and the critical inquiry is "not whether the defendant could have raised its affirmative defense earlier," but "whether the defendant's failure to raise the affirmative defense earlier prejudiced the plaintiff." *Borne v. Nw. Allen Cty. Sch. Corp.*, 532 N.E.2d 1196, 1199 (Ind. Ct. App. 1989), *trans. denied* (1990). The Owners make no assertion that they were prejudiced. No waiver occurred here.

*Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citing Ind. Trial Rule 56(C)). We review the grant or denial of a summary judgment motion de novo. *Layne v. Layne*, 77 N.E.3d 1254, 1264 (Ind. Ct. App. 2017), *trans. denied*. The filing of cross motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Roberts v. Henson*, 72 N.E.3d 1019, 1026 (Ind. Ct. App. 2017). We may affirm an entry of summary judgment on any theory supported by the designated evidence. *Alva Elec.*, 7 N.E.3d at 267. The party appealing a summary judgment decision has the burden of persuading the appellate court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark Cty. Superior Court No. 1*, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).

[10] We begin by noting that covenants describe promises relating to real property that are created in conveyances or other instruments, *Columbia Club, Inc. v. Am. Fletcher Realty Corp.*, 720 N.E.2d 411, 417 (Ind. Ct. App. 1999), *trans. denied* (2000) and are a form of express contract. *Hamilton v. Schaefer Lake Lot Owners Ass'n*, 59 N.E.3d 1051, 1054 (Ind. Ct. App. 2016). Our courts have long recognized and respected the freedom of parties to enter into contracts, *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995), and it is generally accepted that parties may "allocate risk by contract" as a matter of such freedom. *In re Indiana State Fair Litigation*, 49 N.E.3d 545, 549 (Ind. 2016).

[11] Accordingly, Indiana courts recognize exculpatory clauses in contracts and presume that the contracts represent the freely bargained agreement of the

parties. *Crowe v. Boofter*, 790 N.E.2d 608, 611 (Ind. Ct. App. 2003). Indeed, "[i]t is well established in Indiana that exculpatory agreements are not against public policy." *Wabash Cty. Young Men's Christian Ass'n, v. Thompson*, 975 N.E.2d 362, 366 (Ind. Ct. App. 2012), *trans. denied* (2013). "However, some exceptions do exist where the parties have unequal bargaining power, the contract is unconscionable, or the transaction affects the public interest such as utilities, carriers, and other types of businesses generally thought to be suitable for regulation or which are thought of as a practical necessity for some members of the public." *Ind. Dep't of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1072 (Ind. Ct. App. 2001) (citing *Pinnacle Comput. Servs., Inc. v. Ameritech Pub., Inc.*, 642 N.E.2d 1011, 1014 (Ind. Ct. App. 1994)), *trans. denied* (2002). Absent the abovementioned exceptions, such exculpatory clauses are generally enforced and will not be declared void. *Id.* Whether an agreement is contrary to public policy is a question of law dependent on the circumstances of the particular case. *Hi-Tec Properties, LLC v. Murphy*, 14 N.E.3d 767, 773 (Ind. Ct. App. 2014), *trans. denied*.

[12] The Owners do not suggest that the exculpatory clause here is inapplicable to their claim against the HOA, and they concede that exculpatory clauses are generally enforceable. They further state that they do not mean to suggest that exculpatory clauses found in homeowners association covenants, or other types of unsigned contracts or contracts of adhesion, are categorically unenforceable. Instead, they assert that all three of the abovementioned exceptions are manifest under the circumstances presented here, and they urge us to declare the current

clause unenforceable. We decline their invitation, as we find none of the exceptions applicable.

[13] First, the parties' relative bargaining power does not render the exculpatory clause invalid. "As a general rule, a contract may be declared unenforceable due to unconscionability when there is a *great disparity* in bargaining power which leads the party with the lesser power to sign a contract unwillingly and unware of its terms." *Pinnacle*, 642 N.E.2d at 1017 (citing *Weaver v. Am. Oil*, 257 Ind. 458, 464, 276 N.E.2d 144, 146 (1971)) (emphasis added). In such a case, the contract must be one that no sensible person not under delusion or duress or in distress would make, and one that no honest and fair person would accept. *Id.* The agreement here was not such an agreement, as there is no evidence that there was a great disparity in bargaining power between the Owners and the HOA.

[14] The Owners specifically chose to purchase property in Foxcliff Estates and, in doing so, agreed to be bound by the Covenants and Restrictions, including the exculpatory clause, as a condition of the purchase. Despite the Owners' attempts to equate their bargaining relationship as akin to a residential tenant dealing with a landlord, the current situation is wholly unlike situations where we have recognized that a residential tenant does not share equal bargaining power with a residential landlord and has "no meaningful choices" when entering into a contract of adhesion for shelter, "a basic necessity of life." *Ransburg v. Richards*, 770 N.E.2d 393, 402-03 (Ind. Ct. App. 2002) (holding exculpatory clause in residential lease between sophisticated landlord and

unsophisticated tenant violated public policy), *trans. denied*; *see Hi-Tec Props.*, 14 N.E.3d at 773 (holding exculpatory clause in residential lease contrary to public policy).

[15] Buying a home in a specific subdivision or neighborhood is hardly a basic necessity of life, and prospective homebuyers have numerous meaningful choices, including purchasing a home in a subdivision not subject to certain covenants and not governed by a homeowners association. If a buyer finds the terms and conditions of a subdivision's governing documents to be disagreeable or oppressive, that buyer is free to purchase elsewhere or to negotiate a lower purchase price for the property from the seller in light of the conditions. Given the clear availability of other purchase options to the Owners, the agreement here was entered into fairly, and there is no evidence that the Owners were placed in an unfair bargaining position.[3]

[16] The Owners maintain that the "inconspicuous nature" of the exculpatory clause renders it unconscionable, noting that the clause is "buried in the dependent clause of a single-spaced sentence, in the middle of a paragraph" on page twenty-three of a twenty-nine page document. Appellants' Br. at 27. We note that relative bargaining power, and not conspicuousness of contract terms, is the relevant consideration when determining whether a contract was entered into knowingly and willingly, *see Weaver*, 257 Ind. at 465, 276 N.E.2d at 148,

---

[3] There is ample evidence in the record that the Owners were neither first-time nor unsophisticated home buyers.

and we are unpersuaded by the Owners' claim that they were unaware of the exculpatory clause contained in the Covenants and Restrictions. They had the ability to read and understand the significance of the clause had they chosen to do so prior to purchasing their homes and becoming subject to the Covenants and Restrictions. The clause is contained under the title "Enforcement," which clearly indicates that any provision relating to enforcement of or liability pursuant to the Covenants and Restrictions will lie therein. As noted above, there was no great disparity in bargaining power between the parties, and nothing in the designated evidentiary matter demonstrates that the agreement here is one that no sensible person would make or that no honest or fair person would accept.

[17] Finally, it cannot be reasonably argued that the contractual relationship between the Owners and the HOA affects the public interest in a manner such as a public utility, common carrier, or situation "where the indispensable need of one party for the services of another deprives the customer of all real equal bargaining power." *Pinnacle*, 642 N.E.2d at 1018. Neither the operation of the HOA nor the private services that it provides to the residents of Foxcliff Estates are matters of public concern or indispensable necessities. We conclude that none of the exceptions to the general enforceability of exculpatory clauses is applicable here.

[18] Still, the Owners maintain that in some circumstances a court will decline to enforce an otherwise valid agreement on public policy grounds in cases involving: (1) agreements that contravene a statute; (2) agreements that clearly

tend to injure the public in some way; or (3) agreements that are otherwise contrary to the declared public policy of Indiana. *Trimble v. Ameritech Pub., Inc.,* 700 N.E.2d 1128, 1129 (Ind. 1998). The Owners challenge the clause here as "otherwise contrary to the declared public policy of Indiana." Thus, we look to the following factors: (1) the nature of the subject matter of the contract; (2) the strength of the public policy underlying any relevant statute; (3) the likelihood that refusal to enforce the bargain or term will further any such policy; (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Id.* (citing *Fresh Cut*, 650 N.E.2d at 1130).

[19]     Considering the above factors,[4] we find no compelling reason to declare the exculpatory clause void.[5] This is based in large part on two overarching observations that we have already touched upon. First, the nature of this contract is one governing the relationship of residents of a subdivision to an association made up of other residents. The residents have essentially agreed to insulate themselves from liability to themselves. Second, there is no evidence of unequal or unfair bargaining. In other words, there is no public policy impediment to the parties agreeing that the not-for profit HOA, a volunteer entity comprised of other Foxcliff Estates residents, cannot be sued for damages

---

[4] The second and third factors are inapplicable to this dispute.

[5] In support of their argument that we should find the exculpatory clause to be contrary to public policy, the Owners cite to information outside the record on appeal. The HOA filed a motion to strike, which we grant by separate order issued contemporaneously with this opinion.

"for failure either to abide by, enforce or carry out any of the Restrictions." Appellants' App. Vol. 4 at 56. The exculpatory clause is not contrary to any declared public policy of our State.[6]

[20] In sum, the Owners have not established that the exculpatory clause is unenforceable as a matter of law. Accordingly, we affirm the trial court's entry of summary judgment in favor of the HOA.

[21] Affirmed.

Robb, J., and Bradford, J., concur.

---

[6] In an effort to invalidate the clause, the Owners cite to general contract principles and claim that the exculpatory clause renders any agreement between the parties illusory for lack of mutuality of obligation. *See Sec. Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 968 (Ind. Ct. App. 1986) (noting general principle that contract lacking in mutuality of obligation—failing to obligate parties to do anything—is unenforceable). As we have already stated, it is well settled in Indiana that parties are free to allocate risk by contract, and the Owners have cited no authority that this type of exculpatory clause is per se invalid for lack of mutuality. Indeed, we disagree with the proposition that the parties lack any legal obligation to one another simply because the Owners are prohibited from suing the HOA for damages. Moreover, our supreme court explained many years ago that consideration, rather than mutuality of obligation, is required for a valid contract. *See Jordan v. Indpls. Water Co.*, 159 Ind. 337, 346, 64 N.E. 680, 683 (1902) (stating that "it is enough to give mutuality to a contract that is entire in its character, if there is consideration, on both sides for its performance."). The Owners do not argue that the agreement lacked consideration. Their argument fails.